[No. 11281.   Department Two. — May 29, 1888.]

HARRIS ARENDT, RESPONDENT, v. JOHN M. MACE
ET AL., APPELLANTS.

HOMESTEAD — LAND USED AS GARDEN. — A declaration of homestead may properly include not only the land on which the declarant's dwelling is actually situated, but also adjoining land used in connection therewith as a garden, and as a source from which water for the use of the family dwelling is derived.

ID. — FILING BY WIFE — SEPARATE PROPERTY OF WIFE — COMMUNITY PROPERTY. — A declaration of homestead filed by a married woman may embrace land, a part of which is her separate property, and the other part common property. In such a case, it will be presumed that the wife consented to the filing on her separate property.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*G. W. Langan,* for Appellants.

*J. R. Palmer,* for Respondent.

THORNTON, J.—Ejectment. Judgment for plaintiff, and defendant appeals.

The action was brought to recover possession of lot 14 in block A, Pleasanton.

The plaintiff claims under a sale by the sheriff by authority of an execution issued upon a judgment recovered against John M. Mace, one of the defendants herein, and on a deed executed by the sheriff thereon.

The defense interposed was, that at the time of the levy and sale by the sheriff lot 14 was the homestead of defendants, who were then husband and wife.

The court found against this defense, and defendants here contend that the evidence is insufficient to sustain the decision, and that the lot in controversy was the homestead of the defendants at the time above stated.

Lots 14 and 15 adjoined. A witness testifies "that

when he was on the lots with the sheriff (which was when the levy was made) there was a fence all around the two lots except around the front of lot 15." This witness also says: "When I was there with the sheriff, I should judge that the house [the reference here is to the dwelling-house of defendants] was two or three feet from the fence between 14 and 15. . . . . Previous to that time there was a fence between 14 and 15, but Mr. Mace had taken away a section of it when he was going to move the house right on it." He says also that the lot was used as a garden lot by Mace; that he raised potatoes, a few trees, and garden vegetables on it.

Mace testifies that when the homestead was filed he and his wife were residing on lots 14 and 15; that part of the house was on lot 14; that lot 14 was used for garden purposes, for the purposes of the family; that he had a pump standing right in the center of lot 14. This pump was used to pump water on lot 14 from a well on lot 15. In 1881 he put a fence all around lot 14, and raised potatoes and all kinds of vegetables on it for their own use.

Mrs. Mace testified that lot 14 was used for a garden "for vegetables, potatoes, and fruit." She also testifies to the pump on lot 14, put there for the purpose of irrigating. The well was on lot 15, and there were pipes from the well on 15 to the pump on 14; that the pump was put on 14 for the purpose of watering the garden, and for the convenience of the house and kitchen; that they got the water from this pump to use in the house in which they lived. She further states that when the homestead was filed by her on the 10th of March, 1882, there was a fence all around lots 15 and 14; "they were both inclosed in one fence."

We think the above uncontradicted evidence shows that lot 14 was a part of the homestead of defendants when the levy and sale above mentioned were made by the sheriff.

Plaintiff's counsel lays much stress on the circumstance that no vegetables were raised on lot 14 in the year 1882, in which the levy and sale were made. We think this immaterial, in view of the fact of the use of the lot for other purposes. The pump from which water was procured for use by the family was on the lot, and there were trees growing on it,—fruit-trees, we infer, from the testimony of Mrs. Mace. It is clear that this lot was used with lot 15 by the family. If a lot had been used as this one had been, for a year or two just prior to the filing of the homestead, for a garden, the circumstances that vegetables were not grown on it during the year in which the filing was made would, in our judgment, be entitled to but little weight on the question whether such lot, after the filing, constituted a part of the homestead, especially where other uses of the lot are shown.

When the homestead filing was made, lot 15 was the separate property of the wife, and lot 14 was common property, and it is argued by plaintiff that a valid homestead could not be created on land a part of which was the separate property of the wife and the other part common property.

The statute provides that "if the claimant be married the homestead may be selected from the community property, or the separate property of the husband, or with the consent of the wife from her separate property." (Civ. Code, sec. 1238.)

In this case the filing was by the wife, and such filing by her must be regarded as a consent to the filing on her separate property. Under the statute she can certainly create a homestead on her own or separate property.

We see no valid reason why a homestead cannot be created on a lot of land consisting in part of separate and in part of common property, as was done in this case.

We do not intend by what is said above to hold that a husband can, by adopting the course pursued in this case, create a homestead on the separate property of the wife.

In accordance with the foregoing, the judgment and order must be reversed, and the cause remanded for a a new trial.

So ordered.

McFARLAND, J., and SHARPSTEIN, J., concurred.