[Civ. No. 1864.    Third Appellate District.—November 19, 1918.]

## FRANCIS MARION FURMAN, Respondent, v. HENRY S. BREWER, Appellant.

HOMESTEAD—TENANCY IN COMMON.—Under the law relating to homesteads as enacted by the legislature of 1873-74 (Stats. 1873-74, p. 228 et seq.), a homestead could not be created by one of the cotenants on land held in cotenancy.

ID.—DECLARATION BY SURVIVING WIFE AFTER DISTRIBUTION OF HUSBAND'S ESTATE.—Declaration by a surviving wife of a homestead upon real property half of which was distributed to her absolutely and the other half in trust for her maintenance and that of her minor children was valid.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge.

The facts are stated in the opinion of the court.

Cosper & Watkinson, for Appellant.

Francis Cunningham, for Respondent.

HART, J.—The action was brought to quiet the title of plaintiff to the south half of the northwest quarter of a certain section of land in the county of Kings. Judgment was in his favor and the appeal is by the defendant, Henry S. Brewer, from said judgment.

In August, 1889, Samuel G. Brewer was the owner of the entire northwest quarter-section, the south half of which is in controversy here, said quarter-section being the community property of Samuel G. Brewer and his wife, Phoebe Brewer. Samuel G. Brewer died on August 29, 1889, leaving a will of which his wife and Samuel A. Brewer, a son, were appointed executors. The fourth clause of said will reads as follows:

"I give and devise all the rest, residue and remainder of my estate, real and personal, of every name and nature whatsoever, owned by me at the time of my death, to my wife, Phoebe Brewer, and my son, Samuel A. Brewer, to be by them held in trust for my sons, Daniel G. Brewer, Samuel A. Brewer, Charles Brewer and Henry Brewer, for the maintenance of my wife, Phoebe Brewer, and our children who may then be less than twenty-one years of age and unmarried, until all of said children shall have attained unto the age of twenty-one years; and I hereby direct and order that when the youngest living child hereinbefore named shall have reached the age of twenty-one years, that my said estate so devised and bequeathed in trust to my wife, Phoebe Brewer, and to my son, Samuel A. Brewer, shall be sold by them or by their successors in trust, and that the proceeds of such sale be divided share and share alike among my sons, Daniel G. Brewer, Samuel A. Brewer, Charles Brewer, and Henry Brewer."

Said will was probated and a decree of distribution was entered, on May 6, 1892, containing this clause: "To the said

Phoebe Brewer, the surviving wife of said deceased, the one-half of the residue of said estate absolutely and the other half of the residue of said estate to Phoebe Brewer until the youngest child of said deceased becomes twenty-one years old according to the terms of the last will and testament of said deceased." Then follows a description of certain personal property and the northwest quarter of said section of land.

In November, 1897, Phoebe Brewer became the wife of Francis Marion Furman, the plaintiff herein, and, on the 23d of December, 1898, she filed a declaration of homestead upon the said quarter-section.

Certain deeds were introduced in evidence, and certain others were referred to by counsel for the respective parties, showing that, in 1905, Phoebe Furman became the sole owner of the south half of said quarter-section, the land in dispute.

Phoebe Furman died on October 19, 1905, leaving a will in which she bequeathed to her husband the land in question "to have and to hold for his natural life," and upon his death half thereof to go to her daughter, Ada Harper, and half to her son, Henry S. Brewer, the defendants herein.

The principal question presented for decision is as to the validity or invalidity of the homestead declared by Phoebe Furman (formerly Brewer) upon the property in dispute after her marriage to the plaintiff, the homestead being for their joint benefit. The importance of the controversy thus brought to us lies in the fact that Phoebe Furman, upon her death, left a will whereby she gave to her surviving husband, the plaintiff, a life estate in the property in dispute, with a remainder over to two of her children by her former marriage, one of whom is the appellant here, and that the court found and adjudged, obviously by virtue of section 1474 of the Code of Civil Procedure, that the plaintiff is the owner in fee of said property.

The contention of the appellant is that, inasmuch as at the time of the filing of the declaration of homestead the property was held by her and her children as joint tenants or tenants in common, the homestead is invalid. On this proposition, the respondent contends that the declaration of homestead was filed under the statute of 1868, relating to homesteads (Stats. 1867–68, p. 116), the first section of which reads:

"Whenever any party entitled to a homestead under the laws of this state shall be in exclusive occupation of any parcel or tract of land, having the same inclosed, and shall select and record and reside upon the same as a homestead, such party so selecting and claiming shall be entitled to such homestead, and to all rights and exemptions provided by the general law relating to homesteads, to the extent of such claimant's interest in such homestead property, although such land be held in joint tenancy, or tenancy in common, or such claimant own only an undivided interest therein."

It is argued by the respondent that the above section has never been repealed by subsequent legislation relating to homesteads, and that, therefore, the declaration of homestead is valid, even if it be true that Phoebe Brewer and her children, the beneficiaries named in the trust clause of the will of the deceased and also referred to in the decree of distribution in the estate of said deceased, are cotenants of the real property upon which the homestead declaration was filed. On the other hand, the appellant contends that the statute of 1868 has been repealed by the subsequent legislation upon the subject of homesteads. (See Civ. Code, sec. 1237 et seq.)

The present law relating to homestead, in all substantial particulars, is as it was enacted by the legislature of 1873–74. (Stats. 1873–74, p. 228 et seq.) There is no express provision in the present law repealing the act of 1868, and, therefore, if the act of 1868 has been repealed, the repeal has been effected by implication arising either from an irreconcilable inconsistency between the law as it now stands, as found in the sections of the Civil Code above named, and the act of 1868, or from an indication irresistibly deducible from the general tenor of said law that the legislature intended that it should supersede as a scheme for allowing homesteads that which was established by the legislature of 1868. This precise question has never, so far as we are at present advised, been passed upon by the higher courts, and it is probable that the proposition has never been put squarely up to those courts. There are comparatively recent decisions, however, which distinctly hold "that a homestead cannot be created upon land held in cotenancy, or tenancy in common, in favor of one of the cotenants." (*Rosenthal* v. *Merced Bank,* 110 Cal. 198, 202, [42 Pac. 640]; *In re Carriger,* 107 Cal. 618, [40 Pac. 1032]; *Schoonover* v. *Birnbaum,* 148 Cal. 548, 549,

[83 Pac. 999].)   The last-named case comes nearer than any other to which our attention has been called to holding that the effect of the enactment of the sections of the Civil Code relating to homesteads and above referred to was to repeal the act of 1868, for it is therein said: "The decisions under the present and former laws holding that a homestead cannot be created out of lands held in cotenancy violate no well-established rule of law. They merely construe statutory provisions conferring upon householders rights of exemption not otherwise enjoyed. Five sessions of the legislature have been held since the last decisions were promulgated. If the legislative department had not been satisfied with the judicial interpretation as to the extent of the right conferred, there has been ample opportunity to amend the statute so as to give in unmistakable language the right withheld by the decisions. In view of these circumstances, and without expressing any opinion concerning the soundness or unsoundness of the decisions in question, we are of the opinion that they should be adhered to, leaving it to the legislature to extend the right of the homestead to cotenants if it shall see fit."

In *Swan* v. *Walden,* 156 Cal. 195, [134 Am. St. Rep. 118, 20 Ann. Cas. 194, 103 Pac. 931], the grants of three several lots were to Edward Walden and his wife, Luella Walden, in joint tenancy. The wife filed a declaration on all of two lots, which were conveyed to the parties by a single deed or grant. The court held that the homestead was valid, inasmuch as the whole land held by the husband and wife in joint tenancy was impressed with the homestead characteristic, which she could do as to her own interest, which was her separate property, and which she could do as to her husband's interest, "since she has the power to declare a homestead upon the husband's separate property." The Walden case is differentiated from the Schoonover and other preceding cases, in which the right of a cotenant to impress real property held in cotenancy with the homestead characteristic is denied, in the fact that in the latter cases, unlike the Walden case, the cotenants were not husband and wife, the cotenancy being between the husband or his wife and third persons, and consequently the holding of the wife or husband not capable, from the very nature of the tenancy, of being delimited or its limits definitely marked out and fixed. The Schoonover case and the cases followed by it are also to be distinguished from the case where the husband

owns an undivided interest in land, as a tenant in common with others, and is *living on the entire tract with his family,* for in that case it has been held that the wife may claim a homestead on it to the extent of the husband's undivided interest, and to the extent in value of five thousand dollars. (*Higgins* v. *Higgins,* 46 Cal. 260.)

The present case comes within the rule of the Schoonover and other cases which it follows and not within the rule established by the case of *Swan* v. *Walden,* for here, as the evidence shows, the homestead claimant, when filing the homestead, lived on and had actual possession of the entire tract of land, including her undivided one-half thereof as well as the undivided one-half which she held in trust. It also differs from all the cases above named because, as shown, Phoebe Brewer had a beneficial interest in the trust estate.

But it is not necessary for us to decide whether the enactment of the existing code sections resulted in the repeal of the homestead statute of 1868 or whether the decisions so hold, since we are unable to perceive how it can be worked out that Phoebe Brewer and her children, named as beneficiaries in the trust clause of the will of the deceased, and which clause is by reference made a part of the decree of distribution of the latter's estate, hold the property in cotenancy.

It may first be observed that, since the evidence discloses that all the estate of Samuel G. Brewer, deceased, was community property—that is, acquired during the coverture of Samuel G. and Phoebe Brewer (later Furman)—it was, of course, not within the legal competency of Samuel G. to dispose of her community interest by testament. This, though, as we construe his will, he neither intended nor attempted to do; but in disposing of that portion of the estate which he had the right to make testamentary disposal of, he made Phoebe Brewer, with their children named in the trust clause of the will, a beneficiary thereof—that is to say, he provided therein that the interest so disposed of should be for her maintenance until the youngest living of their children named as beneficiaries under the trust clause of the will should attain the age of twenty-one years. Her trusteeship was, therefore, coupled with an interest. That, as trustee, she should have exclusive *actual* possession of the land which constituted the *corpus* of the trust, we doubt not was the intention of the testator. Indeed, as above shown, the evidence shows that she did

have actual possession of and occupied the real property during the period of the existence of the trust, which, it seems to be admitted, though not clearly shown by the record, terminated in November, 1905, the youngest of the children having then attained the age of twenty-one years. Thus, it appears, her right to the possession of the property during the existence of the trust was never challenged or questioned. At any rate, having not only the actual possession of the trust property, but a beneficial interest therein—that of maintenance—she was entitled to protect not only that interest, but any other interest she had in the land as against creditors by impressing the entire tract with a homestead characteristic, unless, as is the contention, she and the other beneficiaries of the trust held the property as cotenants, to which question we will now give our attention and as to which we have this to say: That at no time was the property held in cotenancy unless it can properly he said that Samuel A. Brewer, naméd in and appointed by the will of the deceased as cotrustee of Phoebe Brewer, and the last named, by virtue of their joint trusteeship, became cotenants of the trust estate. But, assuming, without deciding or conceding, that Samuel A. Brewer and Phoebe Brewer, as cotrustees, held the joint property in cotenancy under the will of the deceased, it nevertheless transpires that by the decree of distribution entered in the estate of the deceased six years before the filing of the declaration of homestead in question, and from which decree no appeal was ever taken, Phoebe Brewer was given the entire estate of the deceased in severalty—an undivided one-half absolutely and an undivided one-half to her in trust, to be disposed of by her *according to the terms of the trust clause of the will of the deceased.* The decree of distribution is conclusive as to the provisions of the will and the intention of the testator, and, therefore, under the decree ,Samuel A. Brewer ceased to be a trustee of the trust estate, and it follows, of course, that if ever he was a cotenant of Phoebe Brewer of the property, he was not such at the time of the filing by her of the declaration of homestead thereon.

Nor were the children of the deceased, named as beneficiaries, etc., either joint tenants or tenants in common with Phoebe Brewer of the property. "The properties of a joint estate are derived from its unity, which is fourfold: the unity of interest, the unity of title, the unity of time and the unity

of possession; or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same individual possession.'' (2 Blackstone's Commentaries, 181.) Tenants in common are those who hold by unity of possession.

There is absolutely no semblance of a joint tenancy in the estate created by the testator in the property or in the whole or any part of the property. Nor was there a tenancy in common thereby created. The estate created by the will is wanting in at least two of the unities essential to constitute it a joint estate, viz., the unity of interest and the unity of possession, and the absence of the latter unity leaves it without the distinguishing characteristic of a tenancy in common. As seen, the testament or the trust clause thereof expressly provides that, when the youngest of the living children named as beneficiaries shall have attained the age of twenty-one years, the trust property *shall be sold* and the proceeds of the sale divided share and share alike between said children. Thus it will be noted that there is no provision that said children should at any time have possession of the property. Of course, they had a vested or present interest in the estate, but the actual enjoyment of such interest was postponed to a future time, not by possession of the *corpus* of the trust itself, but by receiving their respective shares of the proceeds realized upon the sale of the property as provided by the will and in the decree of distribution. As a matter of fact, the said children were nearer legatees than devisees, although up to the happening of the contingency upon which the trust property was to be sold the *corpus* of the trust would, strictly, be treated as land rather than as personalty. But, however that may be, it is very clear that it was not intended by the deceased that the said children should have actual possession of the trust property at any time, but that such possession should be enjoyed exclusively by Phoebe Brewer until the happening of the condition which would terminate the trust.

As above stated, the evidence does not directly show when the youngest child reached the age of twenty-one years. It is stated in the brief of counsel for the respondent, and not denied by the appellant, that that event occurred in November, 1905. It also appears from the evidence, however, that, on the seventh day of November, 1905, Phoebe Furman (for-

merly Brewer), as "the distributee of all the estate of Samuel
G. Brewer, deceased," and "Samuel A. Brewer, named as
trustee under said will, but not mentioned in the decree of dis-
tribution of said estate," conveyed to Charles N. Brewer, one
of the named beneficiaries under the trust clause of said will,
all of the northwest quarter of section 28, township 19 south,
range 22 east, Mount Diablo base and meridian, the same
being the quarter-section described in the will and the decree
of distribution; that, on the eighth day of November, 1905,
Phoebe Furman (formerly Brewer) conveyed by deed all of
said quarter-section to the said Charles N. Brewer; that, on
the same day (November 8, 1905), the said Charles N. Brewer
conveyed to Phoebe Furman (formerly Brewer) the south
half of said quarter-section. It was, perhaps, to those con-
veyances that counsel for the plaintiff refer when they say in
their brief that, in the month of November, 1905, the youngest
child arrived at the age of twenty-one years and that there-
upon a division of the property was effected. The record, as
it is presented before us, does not make a clear or satisfactory
disclosure of what action was taken by the trustee in the final
disposition of the portion of the estate subject to the trust
provisions of the will. This, however, is not material to the
decision of the question above considered, and our conclusion
as to that question is, as must be manifest from the foregoing
discussion, that the homestead challenged here was and is
perfectly valid. Mrs. Furman, as seen, was at all times in
exclusive occupation of the whole of the quarter-section and
living and paying the taxes thereon. It cannot be doubted
that a party is entitled to protect by a homestead any interest
he has in land which may be coveted by creditors, if no con-
ditions exist which, under the statute, as construed by the
courts, prevent the acquisition of a homestead right. (See
*Kilmer* v. *Garlick*, 185 Ill. 406, [56 N. E. 1103]; *Bailey* v.
*Dunlap Mer. Co.*, 138 Ala. 415, [35 South. 451]; *Arendt* v.
*Mace,* 76 Cal. 317, [9 Am. St. Rep. 207, 18 Pac. 376]; *Orr* v.
*Shraft*, 22 Mich. 260.) And it may be added that the effect
of the homestead on the south half of the quarter-section—the
land in question here—was not destroyed because of the re-
lease of the homestead as to the part of the tract subject to the
trust clause of the will. (*Dickey* v. *Gibson,* 113 Cal. 26, [54
Am. St. Rep. 321, 45 Pac. 15]; *Estate of Fath,* 132 Cal. 609,
[64 Pac. 995]; *Aldrich* v. *Thornton,* 71 Ill. 324.)

Another point is made by the appellant, and that is that the plaintiff is estopped from the maintenance of this action because he qualified as executor of the will of his deceased wife, Phoebe Furman. There is no merit in the point. (*Sulsberger* v. *Sulsberger,* 50 Cal. 385, 387, 388; *Estate of Firth,* 145 Cal. 236, 239, [78 Pac. 643].)

The judgment appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.